IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CECIL GUY TRUMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:22-cv-00570 |
| ) | |
| SHRADER, *et al.,* ) | By: Elizabeth K. Dillon |
| ) | United States District Judge |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

Plaintiff Cecil Guy Truman, a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983 against five defendants employed by the Virginia Department of Corrections. Before the court is a motion to dismiss filed by two of the defendants, Lt. Lokey and Investigator Clifton. (Dkt. No. 34.) Lokey and Clifton are named only in Claim 4 of the complaint for allegedly violating Truman's due process and equal protection rights. Truman filed a response to the motion. (Dkt. No. 39.) For the reasons stated below, defendants' motion will be granted.

I.  BACKGROUND

The following background is taken from the allegations of Truman's complaint, which are accepted as true for purposes of deciding this motion.

The actions alleged in the complaint arose when Truman was detained at Augusta Correctional Center. (Compl. at 1.) Truman alleges that on May 10, 2022, he was strip searched by an unidentified correctional officer in front of his cellmate. He was told to strip down naked and told to lift his genitals. When Truman complied, the officer said, "I said your penis" and

grabbed plaintiff's penis and "jerked it upward with violence and force" in violation of plaintiff's Eighth Amendment rights. (*See* Compl. at 3, claim one.)

After getting dressed, Truman was handcuffed behind his back and stepped outside of the cell while it was searched. Another correctional officer "looped his arm through [the plaintiff's] to leverage [the plaintiff's] arms upward." Two officers then lifted Truman upward, who "heard the sound of his back break." Truman appears to identify these officers as defendants Shrader and Russo. (*Id.* at 5, claim two.) Truman was then taken to the medical department, and he alleges that the doctor refused to treat him. (*Id*. at 5-6, claim three.)

After these incidents, Lokey and Clifton completed a Prison Rape Elimination Act (PREA) investigation. (*Id.* at 6–8, claim four.) Truman alleges that Clifton responded to Truman's grievance and "lied and said [that plaintiff] did not ask for medical attention" when he requested medical attention "since the day of the assault and battery." (*Id.* at 7.) Further, while Truman was speaking to a police officer on the phone about the alleged incident or incidents, Lokey was "being verbally combative with me during the interview. The tone, body language, and demeanor of Mr. Lokey was threatening and intimidating." (*Id.*) Truman alleges that Lokey and Clifton violated his due process and equal protection rights when they were "openly protecting the officer that brutally and maliciously sexually assaulted and injured" plaintiff. (*Id.* at 8.)

## II.  ANALYSIS

### A.  Standard of Review

When analyzing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-

pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *See Manigault v. Capital One, N.A.*, CIVIL NO. JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

## B. Section 1983 and PREA

Plaintiff has brought this action under 42 U.S.C. § 1983, which provides a cause of action against persons, acting under color of state law, who deprive another person of the rights and privileges secured by the Constitution or laws. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere

3

conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

Plaintiff references PREA, the Prison Rape Elimination Act, in his complaint. This statute "was enacted to address the problem of rape in prison by creating a commission to study the issue and to develop national standards for the detection, prevention, and reduction and punishment of prison rape. Nothing in the statute suggests that PREA was intended to provide a private cause of action for rape, sexual assault, or sexual abuse." *Powell v. Temple*, 1:22cv302 (TSE/JFA), 2022 WL 2306762, at *2 (E.D. Va. June 27, 2022) (citing 34 U.S.C. § 30301 et seq.). Neither can plaintiff state a PREA claim pursuant to § 1983. *See id.* at *4 (noting that "district courts nationwide" and "some courts of appeals have weighed in and also held that the PREA does not create a private cause of action under § 1983") (citing *Krieg v. Steele*, 599 F. App'x 231, 232–33 (5th Cir. 2015); *Williams v. Wetzel*, No. 1:17cv79, 2020 WL 583983, at *17 (M.D. Pa. Feb. 6, 2020), *aff'd*, 827 F. App'x 158, 162 (3d Cir. 2020)).

C. **Due Process**

Truman alleges that Lokey and Clifton violated his due process rights based on their conduct during their PREA investigation, when one of them lied in response to his prison grievance over the alleged assault and the other was "verbally combative" when plaintiff was speaking with a police officer about the incident. None of this conduct amounts to a due process violation.

First, plaintiff has no claim based on the quality of the PREA investigation, as courts have held that there is no freestanding due process or constitutional right to such an investigation under § 1983. *See Powell*, 2022 WL 2306762, at *4 (citing *Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003)). An "allegation of a failure to investigate, without another recognizable

4

right, is not sufficient to sustain a section 1983 claim." *Graw*, 68 F. App'x at 383; *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (finding that plaintiff "has no substantive right of any kind of an investigation" into complaint about excessive force).

Second, Truman has no claim based on Lokey's intimidating language or "body language" because "a guard's verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest." *Powell*, 2022 WL 230672, at *4 (citing *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991); *Emmons v. McLaughlin*, 874 F.2d 351, 354 (6th Cir. 1989)). Such conduct does not rise to the level of a due process or an Eighth Amendment claim. "Verbal abuse of inmates by prison officials, without more, does not rise to the level of an Eighth Amendment violation." *De'Lonta v. Fulmore*, 745 F. Supp. 2d 687, 691 (E.D. Va. 2010).

Third, plaintiff has no due process or other constitutional claim based on Clifton's response to his prison grievance. Inmates "have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S. Carolina Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017); *Blount v. Phipps*, No. 7:11cv594, 2013 WL 831684, at *5 n.12 (W.D. Va. Mar. 6, 2013) ("Generally, prison officials are absolutely immune from liability stemming from their participation in the inmate grievance process.").

For these reasons, Truman's due process claims will be dismissed.

### D. Equal Protection

The equal protection clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To succeed on an equal protection claim, a plaintiff "must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the

unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). If he makes this showing, "the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." *Id.*

Truman does not identify any other similarly situated inmate that was treated differently by defendants. As would be relevant, plaintiff does not identify any other inmate who was assaulted at Augusta and how defendants treated that inmate in light of the assault. Therefore, plaintiff has failed to state an equal protection claim.

### III.  CONCLUSION

For the reasons stated herein, the court will issue an appropriate order granting Lokey and Clifton's motion to dismiss and dismissing the claims against them in this action.

Entered: September 27, 2023.

/s/ *Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge